## BYRD *v*. STATE.

### Opinion delivered July 8, 1905.

1.  EVIDENCE—OPINIONS OF NONEXPERTS.—Nonexpert witnesses who have detailed the facts upon which their opinions are based may be allowed to testify their opinions as to defendant's sanity. (Page 288.)

2.  MURDER IN SECOND DEGREE—DRUNKENNESS.—As the specific intent to kill is unnecessary in murder in the second degree under our statute, if one voluntarily becomes too drunk to know what he is about, and then without provocation assaults and beats another to death, he commits murder in the second degree, just as if he were sober. (Page 289.)

3.  EXCLUSION OF EVIDENCE—PREJUDICE—While it was error to exclude the opinions of nonexpert witnesses that defendant was temporarily insane from drink when he killed the deceased, yet the exclusion of such evidence was not prejudicial if the evidence showed that he voluntarily became drunk, and that the insanity which he manifested was only his ordinary condition when drunk, and if the jury found him guilty only of murder in the second degree. (Page 289.)

4.  TRIAL—ARGUMENT OF PROSECUTING ATTORNEY.—A statement of the prosecuting attorney in his closing argument that "the case is so cruel and barbarous that it is without a parallel in the history of crime" was

not objectionable, being merely the expression of his opinion as to the gravity of the offense.   (Page 290.)

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

Affirmed.

*C. L. Poole* and *J. S. McKnight,* for appellant.

*Robert L. Rogers, Attorney General,* for appellee.

RIDDICK, J.   This is an appeal from the judgment of the Ouachita Circuit Court convicting the defendant, Tom Byrd, of murder in the second degree for killing one Mr. Burnsides in Calhoun County, the venue having been changed to the former county before trial.

The evidence shows that on the 4th day of September, 1904, at the town of Woodbury, the defendant, Tom Byrd, became intoxicated from drinking whisky.   While in this condition, he met Burnsides on the street. Burnsides was a man of fifty-nine years old, weighed about 115 pounds, and was very weak, even for a man of his age, while the defendant was twenty-eight years old, weighed about 170 pounds, and was a strong man physically. Byrd was cursing at the time he met Burnsides, and one of the witnesses testified that Burnsides requested him "to have respect for the ladies, if not for the men." Whereupon Byrd caught Burnsides by the collar, and said to him, "You God damned old son of a bitch, you told a lie on me, and caused me to pay out $27, and I am going to kill you." Burnsides asked him not to strike him, but the defendant struck him, and then threw him to the ground, and sat down astride him, and commenced to beat and pound him in the face with his hands and fists, occasionally catching him by the neck or shoulders, and then raising his head from the ground, and pounding it back against the ground.   Some moments intervened before any one attempted to interfere and stop the furious and brutal attack of the defendant upon the helpless old man.   When they did attempt to separate them, Byrd frustrated their attempt by putting his hand in his pocket as if he was about to draw a pistol and threatening to kill any one who should interfere. After he had pounded Burnsides into unconsciousness some one went to him and told him he had killed the old man, and induced him to desist and leave.   Byrd went home.

When he reached home, he met his wife, and told her that he had killed Burnsides. Soon after that he left his home, and was a fugitive from justice for several days, when he surrendered to the officers. His victim was also taken home where he lingered from Sunday afternoon, the time of the assault, until early on the morning of the following Wednesday, and then died without having gained consciousness. The only excuse for the assault that caused his death, presented at the trial, was that the defendant was insane. But the testimony on this point shows, in our opinion, nothing more than that the defendant occasionally drank intoxicating liquors to excess, and that when he did so he was more than ordinarily violent and unreasonable, even for a drunken man. When in this condition, he sometimes threatened to kill himself, and acted in a fitful, unreasonable way, as drunken men often do. Several of the witnesses who detailed these acts of the defendant were then asked by his counsel whether they considered him insane or not, but the presiding judge refused to permit these questions to be answered. In this ruling we think the judge erred, for such testimony has often been held to be competent by this court. *Green* v. *State,* 64 Ark. 523; *Shaeffer* v. *State,* 61 Ark. 241.

But, if we assume that these witnesses would have answered that the defendant was insane, this testimony would have shown nothing more than that the use of intoxicating liquors had a very bad effect on the defendant, and that they produced in him a species of temporary insanity; but this kind of insanity is ordinarily no excuse for crime.

"The law," says Mr. Bishop, "deems it wrong for a man to cloud his mind or excite it to evil by the use of intoxicating drinks; and one who does this, then, moved by the liquor while too drunk to know what he is about, performs what is ordinarily criminal, subjects himself to punishment; for the wrongful intent to drink coalesces with the wrongful act done while drunk, and makes the offense complete." He goes on to say that there is an exception to this rule where a necessary ingredient in the offense charged is a specific intent, and the intoxication is to such an extent as to render the defendant incapable of forming such an intent. In other words, when it is necessary to show a specific intent to make out the crime, anything that rebuts the fact that there was such an intent is competent evidence to be considered.

If the man was too drunk to form such an intent, that may be considered. Bishop's New Crim. Law, § § 398-400.

In this case the fact that the defendant was intoxicated at the time he assaulted Burnsides may have raised in the minds of the jury a reasonable doubt as to whether there was a specific intent to kill, and led them to reduce the crime to murder in the second degree. But no specific intent to kill is necessary to constitute the crime of murder in the second degree, under our statute, and the law is that "the intention to drink may fully supply the place of malice aforethought;" so that, if one voluntarily becomes too drunk to know what he is about, and then without provocation assaults and beats another to death, he commits murder the same as if he was sober. 1 Bishop, New Crim. Law, § 401.

Now, in this case defendant was not at the time of the killing laboring under delirium tremens or other form of more or less fixed insanity caused by continued intoxication. The insanity that he was laboring under, if any, was the immediate result of the intoxicating liquor he drank on the day of the homicide. In other words, he was simply drunk from the effects of liquor which he had voluntarily taken. While in that condition, he met this infirm old man, towards whom it seems that he entertained some grudge on account of a suspicion that the old man had instigated a prosecution against him, and, with passions inflamed and excited by the drink he had taken, he assaulted him and beat him into unconsciousness without any provocation whatever. It is no doubt true that if he had been sober this deed would not have been done. While his passions were inflamed by drink, his subsequent conduct shows that defendant was not so drunk that he did not know what he was doing. The fact that a few minutes afterward he told his wife what he had done, and made preparations to escape, and did elude the officers for several days, shows that he at once appreciated the gravity of the crime he had committed. But, if we concede that he was insane, it was not delirium tremens, but only his ordinary condition when drunk. He voluntarily drank the whisky, and became drunk. The books are full of cases holding that such insanity, which is only another word for drunkenness, is no excuse for crime. *Casat* v. *State,* 40 Ark. 511; *People* v. *Garbutt,* 17 Mich. 9.

The statement of the prosecuting attorney in his closing argument that "the case is so cruel and barbarous that it is without a parallel in the history of crime" was only the expression of his opinion as to the gravity of the crime as shown by the evidence, and the ruling of the court that it was proper furnishes no ground for reversal.

On the whole case we find no reason to overturn the judgment of the circuit court, and it is therefore affirmed.