Price v. State.

Opinion delivered October 19, 1914.

1. Homicide—sufficiency of evidence.—In a trial for homicide, the evidence held sufficient to warrant a verdict of murder in the second degree.

2. HOMICIDE—PROVOCATION.—Mere words, however offensive, do not justify an assault, and do not even serve to reduce the degree of the homicide from murder to manslaughter.

3. HOMICIDE—SELF-DEFENSE—ARGUMENTATIVE INSTRUCTION—HARMLESS ERROR.—In a trial for homicide the giving of an instruction beginning "the law of self-defense does not justify the right of attack," the instruction being otherwise argumentative in form, *held* not prejudicial, when considered in connection with all the instructions in the case.

4. HOMICIDE—SELF-DEFENSE—DEFENDANT AS AGGRESSOR.—The defendant in a prosecution for homicide is not entitled to invoke the law of self-defense if he is the aggressor in the difficulty, as when, with a deadly weapon in his hand, he sought out deceased and brought on the difficulty with intent to kill.

5. HOMICIDE—SELF-DEFENSE—RETREAT—HARMLESS ERROR.—The failure of an instruction on the issue of self-defense in a prosecution for homicide to state the law with reference to an abandonment of the difficulty by the defendant is not prejudicial, when defendant does not contend that he made any effort to abandon the conflict.

6. HOMICIDE—DEGREE—INTENT—PROVOCATION.—In a prosecution for murder it is proper to give at defendant's request an instruction that the offense would be manslaughter, if defendant struck the fatal blow under anger or fear suddenly aroused by an assault made upon him by deceased which constituted a provocation apparently sufficient to make the passion irresistible, even though defendant was at fault in provoking the difficulty and the assault of deceased was not of such apparent force as would justify defendant in killing in self-defense.

7. HOMICIDE—DEGREE—INTENT—SELF-DEFENSE.—In a prosecution for homicide an instruction is properly refused which entirely ignores the idea of malice and permits the jury to reduce the crime to manslaughter, even though they find that the defendant brought on the difficulty with malice and with intent to kill.

8. HOMICIDE—SELF-DEFENSE—SUDDEN PASSION—CONDUCT OF DEFENDANT —INTENT.—When defendant sought a difficulty with deceased with malice against him, and assaulted him, or used opprobious epithets toward him for the purpose of bringing on the difficulty, he can not claim the benefit of a sudden passion aroused by an assault made by deceased in consequence of defendant's own conduct.

9. APPEAL AND ERROR—FAILURE TO ASK PROPER INSTRUCTION.—Although a defendant in a prosecution for homicide is entitled to an instruction on a certain issue, he can not complain of the court's failure to give an instruction on that issue where he failed to ask a correct instruction on the same.

10. CRIMINAL LAW—DEGREE—REASONABLE DOUBT—DUTY OF JURY.—An instruction that "if any reasonable view of the evidence is or can

be adopted which admits of a reasonable doubt of the guilt of the defendant, then it is your duty to adopt such view and acquit," properly places the issue of the degree of the crime committed as provided by Kirby's Digest, § 2386, which provides that "where there is a reasonable doubt of the degree of the offense which the defendant has committed, he shall only be convicted of the lower degree."

11. TRIAL—INSTRUCTIONS ON SPECIFIC FEATURES.—In the trial of a case a court should not single out specific features of the case and emphasize them in separate instructions, but should submit all the facts and circumstances together for the consideration of the jury.

12. CRIMINAL LAW—MOTIVE—INSTRUCTIONS—SINGLING OUT ISSUE—PRACTICE.—While it is proper for the jury in a criminal prosecution, to consider the absence of a motive on the part of the deceased, it is nevertheless bad practice for the court in its instructions to single out that question, and a judgment will not be reversed because of the court's refusal to do so.

13. CRIMINAL LAW—INSTRUCTIONS—CHARACTER OF ACCUSED.—In a prosecution for homicide, evidence of defendant's good character is admissible, but it is not prejudicial error for the court to refuse to expressly tell the jury, that they must consider such evidence.

14. CRIMINAL LAW—EVIDENCE—COLLATERAL MATTER—RES GESTAE.—In a prosecution for homicide the State offered evidence that one D., during the difficulty which resulted in the killing, took up an ax which was taken from him by the by-standers. The defendant introduced D. as a witness and on cross-examination he denied that he had an ax in his hands. *Held*, it was proper for the State thereafter to introduce witnesses to testify that D. did have an ax and advanced on the combatants, this not being a collateral matter, and being a part of the *res gestae*.

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed.

*John N. Cook, William H. Arnold* and *Pratt P. Bacon,* for appellant.

1. The evidence does not support the verdict. The only crime shown is at most manslaughter. Kirby's Dig., § § 1777-8. No malice is shown. 93 Ark. 409.

2. The court erred in its charge to the jury. 104 Ark. 397; 93 *Id*. 409.

3. The remarks of the judge were prejudicial. 108 Ark. 129.

4. Improper evidence was admitted.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The evidence is amply sufficient to sustain the finding of the jury. 109 Ark. 130, 134; *Ib.* 138, 150.

2. Reviews the court's instructions and contends there is no error. Kirby's Dig., § 1765; 109 Ark. 510, 513, 461, 463; 4 Crawford's Digest, Trial, § 1687 (d).

3. Where the killing is proven to be without justification or excuse, it is the duty of the jury to convict regardless of previous good character. 34 Ark. 743; 44 *Id.* 115, 122.

4. The remarks of the trial judge were not prejudicial and there is no error in the admission and exclusion of evidence. Mere conclusions of a witness are not competent. The bias of a witness may be shown. It was proper to show the conduct of Kelly Dickson at the scene of the killing, as part of the *res gestae.*

5. On the whole case the judgment is right and should be affirmed.

McCULLOCH, C. J. The defendant Dan Price was indicted by the grand jury of Miller County for the crime of murder in the first degree in killing one Jesse Patton by cutting him with a pocket knife. The jury convicted him of murder in the second degree and fixed his punishment at twenty-one years in the penitentiary.

Defendant and deceased were both young men living in a country neighborhood in Miller County, and the killing occurred out in the woods where deceased was at work with several companions cutting stave bolts. Defendant is unmarried and had been visiting a young lady in the neighborhood. A report was circulated that deceased, Jesse Patton, and one Jim Pauling had made a statement in the hearing of others to the effect that they had seen the defendant hug and kiss the girl. This report reached the ears of the girl's father and he appealed to defendant to have the statement corrected. On the day of the killing, defendant, accompanied by his own brother and the father of the girl, went to the woods where deceased and

his companions were working. Before they reached
there, deceased or some of those with him were apprised
of the fact that the party was coming, and one of his com-
panions, Adcock by name, went off and got a Winchester
rifle and brought it to the scene and placed it under a
log where they were at work. When defendant and his
companions came up to the scene, deceased was sitting
on the end of the log with an iron wedge in his hand
tapping on the log. The party stood around there for
twenty or thirty minutes engaged in conversation, the
defendant standing out a few feet in front of the deceased
with his pocket knife in his hand whittling. After they
had conversed in a friendly way for some time, defendant
said to the deceased ''We come up here to see you about
some tales.'' The deceased asked, ''Where's Jim Paul-
ing?'' and defendant replied ''We come by there but he
wasn't at home. We will see him later.'' Deceased then
asked ''What have you heard?'' And defendant replied
''I heard you said you saw me hug and kiss Velma three
times.'' Deceased said ''I didn't say it.'' But after
defendant replied ''all right,'' deceased added ''I said
I saw you twice.'' Defendant then called deceased a
damned liar and stabbed him in the breast with the knife
which was then open in his hand. The testimony of some
of the State's witnesses tends to show that at the time
defendant struck the blow he had reversed the blade of
the knife downward; and other testimony adduced by
defendant himself tends to show that the knife was held
in the same position as when he was whittling. The tes-
timony on the part of the State also tends to show that
deceased was making no demonstration towards the de-
fendant, but merely rose up about the time the blow was
struck, and that he made an attempt to strike defendant
with the wedge but that the blow was without any force
and the wedge went over defendant's shoulder. That
testimony indicated that the blow was struck before the
deceased tried to use the wedge. The testimony on the
part of the defendant tends to show that when defendant

called deceased a liar the latter was standing up at the time and struck at defendant with the wedge before the stabbing was done.    At any rate, the parties then engaged in a scuffle and others attempted to interfere or to separate them; and after several blows were passed, deceased started to run away and defendant followed him up and beat him over the head with his fist or with the knife.    In a few moments it was discovered that deceased had been stabbed and he began to grow weak and died in a few minutes, before the surgeon could be brought to give him attention.

(1-2)    It is insisted in the first place that the evidence is not sufficient to sustain the conviction of murder in the second degree and that putting the testimony in its strongest light it only established the defendant's guilt of manslaughter.    We think there is enough evidence in the record to establish the crime of murder in the second degree.    It is undisputed that defendant killed deceased, and that death resulted from the first blow struck by him immediately after he had called the deceased a liar.    The jury could have found, under the evidence, that the defendant struck the blow immediately after the epithet was applied and before deceased showed any resentment or attempted to strike defendant with the wedge.    The jury were therefore warranted in finding that the defendant was the aggressor in the difficulty; that he went to the scene with the intention of compelling deceased to retract the statements he had made, and to do the latter bodily harm unless he made the retraction. In other words, the evidence warranted a finding of the presence of malice on the part of the defendant and the absence of sufficient provocation to justify the killing. That being true, it can not be said that the evidence was entirely insufficient to justify a conviction of murder in the second degree.    Doubtless the defendant acted upon what he conceived to be great provocation in seeking out deceased for the purpose of obtaining a retraction of the remarks he had made about defendant's conduct with the

girl; and the deceased's offensive reply in saying that he had seen him hug and kiss the girl twice was calculated to provoke him to anger; but it is too well settled for controversy that mere words, however offensive, do not justify an assault and do not even serve to reduce the degree of the homicide from murder to manslaughter. *Vance* v. *State,* 70 Ark. 272; *Wheatley* v. *State,* 93 Ark. 409.

There are numerous exceptions to the ruling of the court in giving and refusing instructions, and several of the exceptions, though not all of them, call for discussion.

The tenth instruction, which was given over defendant's objection, reads as follows:

"The law of self-defense does not imply the right of attack. If you believe from the evidence in this case that the defendant armed with a deadly weapon sought the deceased with a felonious intent to kill him, or sought or brought on or voluntarily entered into the difficulty with the deceased with the felonious intent to kill him, then, the defendant can not invoke the law of self-defense no matter how imminent the peril in which he found himself placed."

(3) There was a special objection made to the first sentence in this instruction which declares that the law of self-defense "does not imply the right of attack." It can not be doubted that the sentence states a correct principle, but the use of the epigram rather gives the instruction an argumentative turn which should have been avoided. It is on this ground that that part of the instruction is objected to, and we think the objection is not without force; but it does not constitute prejudicial error when the instruction is considered along with others given in the case properly submitting all the issues to the jury. In the case of *Motley* v. *State,* 105 Ark. 608, we held that the statement in an instruction that "the law of self-defense begins in necessity and ends in necessity" was not prejudicial where the instructions on self-defense as a whole correctly submitted the issues to the jury. The sentence in the instruction under consider-

ation does not amount, as contended, to an assumption of fact that the defendant made the first assault and for that reason he is to be denied the right of self-defense.

(4)   Again, it is said the instruction is erroneous and prejudicial in using language which assumed, that the defendant assaulted the deceased and that he was armed with a deadly weapon.   The instruction does not assume the existence of those facts, but leaves it to the jury to determine from the testimony whether or not the defendant assaulted the deceased with intent to kill him or to bring on a difficulty, and whether he was at the time armed with a deadly weapon.   It is undisputed that the defendant went to the scene for the purpose of seeking deceased and obtaining a retraction, or at least an explanation, of the statement which rumor attributed to him. It is also undisputed that at the time he broached this subject with deceased he was standing with his knife open and in his hand.   The jury might have found from the testimony that defendant was perfectly innocent of any evil intentions in having his knife in his hand; or, on the contrary, they might have found that he had it in that position by design so as to be ready to attack the deceased if he refused to make the retraction.   The meat of this instruction is that the defendant was not entitled to invoke the law of self-defense if he was the aggressor in the difficulty, and if, with a deadly weapon in his hand, he sought out deceased and brought on the difficulty with intent to kill.   It does not assume the existence of any of these facts, but submits them to the jury.

(5)   The instruction is indeed inaccurate in omitting from the statement of the law of self-defense the idea of abandonment of the difficulty which would give the accused the right to invoke the law of self-defense even though originally he was the aggressor; but that omission was harmless in this case for the reason that there is no contention that defendant attempted to retire from the difficulty.   He contends that he was not the aggressor,

but he does not contend that he made any effort at all, or took any steps towards abandoning the difficulty.

The court gave at the request of the defendant three instructions on the law of self-defense which were certainly as favorable as defendant could have asked, and completely put before the jury his theory of self-defense. Whether or not they are accurate statements of the law we need not determine. Those instructions are as follows:

"3.   You are instructed that if you believe from the evidence that the defendant was assaulted by the deceased with such violence as to make it appear to the defendant, acting without fault or carelessness on his part, that the deceased manifestly intended and endeavored to take his life or do him some great bodily harm, and that the danger was urgent and pressing, then in that case the defendant was not bound to retreat, but had the right to stand his ground, repel force with force, and if need be, kill deceased to save his own life or prevent his receiving great bodily injury, and it is not necessary that it shall appear to the jury to have been necessary to kill deceased."

"8.   You are instructed that if you find from the evidence that the deceased was armed with an iron wedge at the time he was cut, and was making an effort to strike the defendant or acting in such manner as to induce the defendant as a reasonably prudent person to believe that he was in the act of striking him with said iron wedge and kill him, or do him great bodily injury, then the law presumes that the deceased intended to kill or to inflict serious bodily injury upon the defendant."

"9.   You are instructed that if you believe from the evidence that defendant had heard that deceased had circulated or started the report about himself and Velma Dickson, then you are instructed that defendant had the lawful right to approach deceased in a peaceful manner for the purpose of correcting said report. So in this case, if you believe that defendant did in fact approach

deceased in a peaceable manner and inquire of him as to such report and that deceased thereupon assaulted or attempted to assault the defendant, as it appeared to the defendant acting as a reasonably prudent person without fault or carelessness on his part in coming to such conclusion, then defendant had the right to stand his ground, repel force with force, and to kill deceased if it was necessary as viewed from defendant's standpoint, to prevent deceased from killing him or inflicting great bodily injury upon him.''

We, find, therefore, that there was no error involved in the giving of instruction No. 10, and it does not call for a reversal.

The court refused to give an instruction requested by the defendant as follows:

''4.   You are instructed that although you may believe from the evidence that immediately preceding the assault upon defendant by Patton, if you believe there was such an assault, the defendant used insulting or abusive language toward or about Patton, yet this language would not justify Patton in making an assault upon defendant; and if you believe that such an assault, if one was made, was calculated to and did arouse the defendant to great passion, either of anger, fear or terror, and while laboring under such passion, he inflicted the injury from which Patton died, he can not be convicted of any crime greater than manslaughter.''

(6)   The court gave general instructions on manslaughter, but the defendant was entitled to an instruction, if he had asked for it, submitting the theory that the degree of the offense would be manslaughter if he struck the fatal blow under anger or fear suddenly aroused by an assault made upon him by deceased which constituted a provocation apparently sufficient to make the passion irresistible, even though he was at fault in provoking the difficulty and the assault of deceased was not of such apparent force as would justify defendant in killing in self-defense.   *Allison* v. *State*, 74 Ark. 444.

(7-8)   Instruction No. 4, requested by appellant, was not correct and was properly refused, for it entirely ignored the idea of malice and permitted the jury to reduce the crime to manslaughter even though they found that defendant brought on the difficulty with malice and with intent to kill.   The omission is an important one, for if defendant sought the difficulty with malice against the deceased and assaulted the latter, or used opprobious epithets toward him for the purpose of bringing on the difficulty, he can not claim the benefit of a sudden passion aroused by an assault made by the deceased in consequence of the appellant's own conduct.   *Blair* v. *State,* 69 Ark. 558; *Noble* v. *State,* 75 Ark. 246.

In the case of *Noble* v. *State, supra,* we stated the law on this subject as follows: "A person can not take advantage of a provocation invited and brought about by his own unlawful aggression, in order to reduce the grade of his crime from murder to manslaughter, when he has not in good faith attempted to retire from the encounter.   If appellant was the aggressor in the first difficulty, and was assaulted and cut by deceased while so engaged, and killed deceased upon a sudden heat of passion aroused by the assault made by deceased, the grade of his offense was not thereby reduced to manslaughter.   This is because malice, which is an essential element of murder, is implied from the fact that he sought the difficulty in which provocation for passion was given, and became the aggressor therein."

In the same case we quoted the following exception to this rule stated by Mr. Bishop: "Where an assault, which is neither intended nor calculated to kill, is returned by violence beyond what is proportionate to the aggression, the character of the combat is changed; and if, without time for his passion to cool, the assailant kills the other, he commits only manslaughter."   2 Bishop, Crim. Law, section 702.

(9)   It will be noticed that the instruction on this subject requested by defendant does not contain the ele-

ments stated by Mr. Bishop as one of the exceptions to the general rule. Defendant did not, as we have already shown, attempt to retire from the difficulty; nor does the instruction submit the question whether the defendant brought on the difficulty with malice and with intent to provoke a difficulty and kill deceased. Defendant was entitled to an instruction on the subject embodied in instruction No. 4, but he can not complain of the court's refusal to give one unless the instruction he asked was correct. *Allison* v. *State, supra; Scott* v. *State,* 75 Ark. 142.

Another assignment of error relates to the court's refusal to give an instruction containing the following statement on the subject of reasonable doubt: "In considering your verdict in this case if you believe that defendant is guilty, but have a reasonable doubt as to whether he is guilty of murder or manslaughter, then it is your duty to give him the benefit of the doubt and find him guilty of manslaughter."

Our statute declares that "Where there is a reasonable doubt of the degree of the offense which the defendant has committed, he shall only be convicted of the lower degree." Kirby's Digest, § 2386. But the statute does not in express terms require the court to so instruct the jury, nor is it necessary that such an instruction should be given in the precise language of the statute. It is sufficient if the instructions as a whole convey that idea to the jury, so that if they have a reasonable doubt of the guilt upon any degree, the jury should acquit of that degree and find the accused guilty of the lower degree about which there is no reasonable doubt.

The court, however, gave a general instruction on the subject of reasonable doubt and gave the following one on this subject at defendant's request:

"5. You are instructed that the burden is on the State to prove that the defendant is guilty as charged in the indictment, and if the evidence fails to satisfy your minds beyond a reasonable doubt of his guilt, then it is

your duty to give him the benefit of such doubt, and acquit. If any reasonable view of the evidence is or can be adopted which admits of a reasonable doubt of the guilt of the defendant, then it is your duty to adopt such view and acquit.''

(10)   Now, we think the instruction just quoted was abundantly sufficient to convey to the jury the idea expressed by the statute in imposing the duty upon the jury of giving the accused the benefit of every reasonable doubt upon each degree of the offense charged in the indictment. The instruction says that ''if any reasonable view of the evidence is or can be adopted which admits of a reasonable doubt of the guilt of the defendant, then it is your duty to adopt such view and acquit.'' That necessarily means that before the defendant could be guilty of any charge embraced in the indictment the evidence must be sufficient to satisfy the jury beyond a reasonable doubt. It is probably good practice to give the instruction in the language of the statute, and certainly it would be unobjectionable for the court to do so in cases of this kind; but we must assume that the members of the jury were of sufficient intelligence to comprehend the full meaning of such an instruction as the court did give, and we think it necessarily conveyed to their minds the idea expressed in the statute and that they understood the law to be declared that if they had a reasonable doubt as to the guilt or innocence of the defendant upon any degree of homicide involved in the indictment, it was their duty to acquit him of that particular degree of the offense. No error resulted, therefore, in the court's refusal to give the instruction requested.

Defendant introduced numerous witnesses to prove his good character for peace and quietude, and requested the court to give the following instructions on that subject, which the court refused:

''13.   The court instructs the jury that a defendant on trial for a crime is entitled to offer in defense evidence

as to his good character, limited, however, to proof of such character as would make it unlikely that he would be guilty of the crime charged; but if it should appear that the defendant is guilty as charged you should so find, notwithstanding his good character, if any has been shown."

"16. In criminal prosecutions where there is a material conflict in the testimony as to whether the defendant or the deceased was the aggressor, the defendant may put in evidence proof of his good character, which the jury may take into consideration in determining his guilt or innocence."

"19. The defendant has offered evidence of good character. You will consider this with all the other evidence in arriving at your verdict as to his guilt or innocence."

(11-12) Each of those instructions correctly stated the law, but it is another question whether it was proper to give them to the jury, or rather whether it was error for the court to refuse them. That is a question which this court has never passed upon, but we are not without authority upon analogous questions. This court is thoroughly committed to the rule that in the trial of cases a court should not single out specific features of the case and emphasize them in separate instructions, but should submit all the facts and circumstances together for the consideration of the jury. We have said that while it was proper for the jury to consider the absence of a motive on the part of an accused, yet it was bad practice to single out that question and a judgment would not be reversed on account of the court's refusal to do so. *Hogue* v. *State,* 93 Ark. 316.

In *Gilchrist* v. *State,* 100 Ark. 330, we said that it was proper for the jury to consider the age of a youthful defendant in determining the degree of homicide involved in the charge against him, but that it was improper for the court to isolate that fact by submitting it in a separate instruction.

(13)   So, in the present case, we say that while it is proper in a case of this kind to admit testimony of the good character of accused, and it may be proper in some cases to indicate to the jury by an appropriate instruction the limitations upon the consideration of such testimony, yet it is not generally erroneous for the court to decline to separate this feature of the evidence from the other facts and circumstances in the case and submit it in a separate instruction.   The admission of the testimony by the court was equivalent to an instruction that the jury should consider it along with other facts and circumstances in the case for the purpose of determining the question of defendant's guilt or innocence, and there was no prejudicial error in refusing to expressly tell the jury that they might consider it.   We are aware of the fact that there are some cases holding to the contrary on this proposition, but they are not in harmony with our decisions upon analogous questions and for that reason we do not give them any persuasive force.

There was an exception to the ruling of the court in permitting the State to introduce testimony of two witnesses to the effect that the father of the girl named, who was present at the time of the killing, and was a witness in the case, seized an ax during the encounter and that it was taken away from him by some of the by-standers.   The defendant introduced Mr. Dickson, the father of the young lady, and he gave an account of the difficulty somewhat at variance with that of other witnesses.   He testified that when the difficulty between the two men occurred he, with others, ran up to them, and that in his excitement he picked up a piece of the heart of a stave bolt and that one of the by-standers took it away from him and pushed him back.   He was asked on cross-examination if he didn't have an ax in his hand when he started toward the combatants and that Moore, one of the by-standers, took it away from him, and he replied to this question by stating that he did not have an ax but had the piece of stave bolt in his hand.   The State, in rebuttal,

introduced Moore and other witnesses to prove that Mr. Dickson took up an ax and started toward the combatants, and that the by-standers took it away from him.

(14) It is insisted that this was error for the reason that this was a collateral matter upon which the State was bound by the answer of the witness, and that it was improper to impeach him by the testimony of the other witnesses. Counsel invoke the rule announced by this court in *McAlister* v. *State,* 99 Ark. 604, to the effect that ''it is proper to permit a witness to be asked as to specific acts affecting his credibility, yet if such matters are collateral to the issue, he can not, as to his answer, be subsequently contradicted by the party putting the question.'' The difference, however, in the cases is that this is not a collateral matter but is related to the acts of one who was present and apparently attempting to participate in the difficulty. It constituted part of the *res gestae* and the State was, entitled to prove it as an independent fact and not merely as a collateral matter bearing solely upon the credibility of the witnesses. *Childs* v. *State,* 98 Ark. 430.

There are several other assignments of error which none of the judges think are well founded or of sufficient importance to call for discussion.

The views here expressed concerning the several propositions involved in this appeal are those of a majority of the judges; and if these statements of the law upon each of the assignments of error were shared by the same judges, constituting a majority on the separate questions involved, an affirmance of the judgment would necessarily result; but such is not the case, for some of the judges agree upon some of the conclusions here stated and disagree as to others, which brings about a result that while a majority of the judges agree upon the propositions of law which would affirm the case, a majority of them for different reasons vote to reverse it. Two of the judges (WOOD and HART, JJ.) are of the opinion that the court erred in giving instruction No. 10, and that the judgment

should be reversed and the cause remanded for a new trial. Mr. Justice HART is also of the opinion that the court erred in refusing, to give instruction No. 16 requested by defendant. Two of the judges (WOOD and SMITH, JJ.) think that the court erred in refusing to give the defendant's requested instruction on the subject of reasonable doubt, and that this constituted error which calls for a reversal of the judgment for murder in the second degree and a reduction of the degree of the offense to manslaughter, as this instruction relates only to the degrees of homicide and not to the question of guilt or innocence. Mr. Justice KIRBY and the writer are of the opinion that there is no error in the record and that the judgment should be affirmed. While the law of the case is settled by the concurring views of the judges as expressed in this opinion, the only net result which can be extracted from the divergent votes of the judges upon the question of affirmance or reversal is that the judgment for murder in the second degree must be reversed, but that the cause should not be remanded for a new trial if the attorney general elects to let the judgment stand as to the degree of manslaughter. This condition results from the fact that while three of the judges vote to reverse the judgment for murder in the second degree, only two of them vote to remand the cause for a new trial; and the vote of the other one, together with the two judges who think the whole judgment should be affirmed, prevents a remanding for a new trial if the State is willing to let the conviction for the crime of manslaughter stand. *Pollock* v. *Hennicke Co.*, 64 Ark. 180; *St. Louis, I. M. & S. Ry. Co.* v. *Adams*, 74 Ark. 326; *Carson* v. *Fort Smith Light & Traction Co.*, 108 Ark. 452.

The judgment of the circuit court is therefore reversed and set aside in so far as it adjudges the defendant guilty of murder in the second degree, and the cause will be remanded for a new trial unless the attorney general elects, within fifteen days, to stand upon a conviction of voluntary manslaughter, in which event the cause

will be remanded with directions to the circuit court to fix the punishment and sentence the defendant for the crime of manslaughter.