BAILEY *v.* STATE.

4307                                      173 S. W. 2d 1010

Opinion delivered July 12, 1943.

122

*Paul E. Talley,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

McFADDIN, J.  Appellant was convicted of murder in the second degree and sentenced to five years in the penitentiary, and has brought this appeal.  The victim of the homicide was Dr. P. A. Ritchie, Jr., of North Little Rock, Arkansas.

### The Facts.

Appellant was in Arkansas on a visit from another state, and while in an intoxicated condition, drove his car to and in North Little Rock.  About 11:00 p. m. on November 9, 1942, deceased, Dr. P. A. Ritchie, Jr., and other members of his family at the Ritchie home in North

Little Rock heard a crash and rushed out to the street to learn that some one had driven into the Ritchie car parked along the curb. Deceased with his brothers, Angelo Ritchie and Elmer Ritchie, gave chase to the escaping driver, who was the defendant herein. They trailed the defendant across the Broadway Bridge into Little Rock and overtook him at the stop light at Broadway and Markham streets, where the defendant, seated in his Chevrolet car in the center lane of the street, was waiting for the traffic light to change from red to green. Dr. Ritchie and his brother, Angelo, jumped on the running boards of the defendant's car and told him he had struck their car in North Little Rock, and that they were going to surrender him to the police. The police headquarters was at the City Hall at Broadway and Markham streets, and the Ritchies directed the defendant to turn to the right and park on Markham street in front of the City Hall. At first the defendant denied striking a car; but then he asked the Ritchies not to deliver him to the police, stating that he was drunk and that the police would make it hard on him. The Ritchies persisted in their demands, and the defendant turned his car to the right into Markham street, with the apparent intention of parking as directed.

Dr. Ritchie was on the running board on the side of the car next to the defendant, and Angelo Ritchie was on the other side. Instead of parking, the defendant speeded up his car to twenty or thirty miles per hour and swerved from side to side on Markham street, in an effort to shake off the Ritchies. Angelo jumped off of the car after it had gone west on Markham street about 225 feet, and fell flat on his face. Deceased, Dr. Ritchie, hung on to the Bailey car for a short distance, but his body was found on the pavement on Markham street about 300 feet west of where Angelo Ritchie jumped off of the car. Dr. Ritchie was unconscious and died the next day from the skull fracture received when his head hit the pavement. The defendant did not stop, but spent the night in his car in the woods; and was arrested in Forrest City, Arkansas, on November 11 while returning to the state where he worked. He made a voluntary sworn

statement to the officers shortly after his return to Little Rock on November 12, and his statement was received in evidence by consent. He admitted being drunk, did not remember hitting the car in North Little Rock, but remembered two men getting on his car. We quote direct from a portion of his statement made in question and answer form:

"A. They got on my car when I was waiting for the light or whatever held me up. Q. They got on your car while the motor was dead? A. Yes, sir. One of them said, 'Pull over to the curb. We are going to turn you over to the cops.' I said, 'I don't think that would be right. I'm drunk. They would stick me to the devil. If I have done any damage or hurt your feelings in any way, I'll pay for it.' Q. What did they say? A. They said they were going to turn me over to the cops. I said, 'I don't think you're man enough,' and I tried to get them to get off the car. . . . Q. Was one of them fighting you? A. Yeah. The fellow next to me was fighting at me and grabbed the steering wheel. The other fellow jumped off. Q. What did he say? A. The fellow on the left did all the talking. Q. The one on your side did all the talking? A. Yes, sir. Q. And he was fighting with you? A. Yes, sir. Q. After the other one jumped off the car what did you do? A. I went on. This fellow grabbed at me and when he did he missed the steering wheel and I throwed my hands up and he went off. . . . A. You might just say it was suicide to him. I told him to get off. I wouldn't have done anything like that I know. If I seen the man was drunk, I would have got his license and turned it over to the police. Q. The thing is you were drunk and they were going to turn you over to the officers? A. Yes, sir. When a man says something about the law to a drunk man, he naturally loses his head." In short, the homicide was admitted. Other facts were shown and some will be referred to hereinafter.

### The Issues Here.

The appellant, by exceptions, motion for new trial and brief here, has brought forward four assignments

of error: (1) Refusal to give instructed verdict. (2) Giving of instruction on defendant's testifying. (3) Refusal to charge on voluntary manslaughter. (4) Refusal to charge on involuntary manslaughter.

We discuss these assignments in four topic headings; and we add a fifth topic heading, not of any assignment of error, but of the method of curing the reversible error which we find to have been committed by the trial court; namely, the failure to instruct on voluntary manslaughter.

I. Refusal to Give an Instructed Verdict. Appellant argues that he could not have been guilty of second degree murder, and that a request for an instructed verdict should have been granted on that degree of homicide. He argues that he had no intention to kill the deceased or anyone else, and that the deceased and his brother were trespassers on the automobile of the defendant in the night time, and that they had no right to restrain the defendant, and that they were assaulting the defendant by striking him at the time he swerved his car to shake them off the running boards; and that these facts keep the case from being one of second degree murder. This was the appellant's theory of the case, which he doubtless argued to the jury, as he had a right to do. The trial court correctly instructed the jury on the defendant's theory, and it was a question of fact for the jury as to whether the defendant's theory of the case was correct. In defendant's instructions 4, 6, 7 and 8, the jury was told, in effect, that Dr. Ritchie and his brother were not authorized to make the arrest; that the defendant had a right to use means and force to repel the deceased; that if the defendant honestly believed, in good faith, that he was about to receive bodily harm at the hands of the deceased, and while grappling with the deceased and while driving the car, the deceased was thrown or fell from the running board, the defendant should be acquitted; and if the evidence showed that the death of the deceased was an accident, the defendant should be acquitted. In short, the trial court submitted to the jury the defendant's theory of the case on the question of guilt or innocence on second degree murder.

But the state had a right to have its theory submitted on second degree murder, and there was ample evidence in the record to support a conviction for second degree murder, and the trial court committed no error in refusing to grant the instructed verdict for the defendant. The defendant's own statement (as contained in his confession, admitted by consent) was strongly against him. He told the deceased and his brother when they said they were going to take him to the police: "I don't think you are man enough." And he said, "I tried to get them off of the car." Again he said, "You might just say it was suicide to him. I told him to get off." In short, the defendant intended to get the deceased and his brother off of the car by exercising all the force that it took to do it; and defendant contended that if such force resulted in their deaths, it would be the same as if they had each committed suicide. The defendant admitted the homicide. Section 2968 of Pope's Digest says: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

In the case of *Byrd* v. *State,* 76 Ark. 286, 88 S. W. 974, it was held that no specific intention to kill is necessary to constitute the crime of murder in the second degree. A person intends the logical consequences of his act; and to throw a person from a speeding automobile onto a pavement with the car going at a speed of twenty to thirty miles an hour can, and did in this case, result in the death of the thrown person. The defendant said he intended to throw deceased off the car. He did. Death was the result. He used his car, his speed and his driving just as effectively and efficiently as he would have used a pistol or other dangerous weapon. He intended his act.

In 5 Am. Jur. 928, it is stated: "If the driver of a motor vehicle should intentionally strike another with his car with intent to kill him, and should thereby kill

him, it would be murder independently of statutes relating to the operation of motor vehicles. It is not, however, essential that there should have been an actual intent upon the part of the operator to kill the deceased. The necessary malice may be inferred or implied where the driver acts so recklessly or wantonly as to manifest a depravity of mind and disregard of human life, as where he drives an automobile in such a manner as directly to imperil human life and without regard for the presence of persons on a *busy street; for example, one who, when in an intoxicated condition, drove an automobile at a reckless speed along the principal street of a village, into collision with another car, which resulted in the death of its occupant, may be found guilty of murder in the second degree.''

In the case of *Goodman* v. *Commonwealth,* 153 Va. 943, 151 S. E. 168, it was held: ''When men, while drunk or sober, drive automobiles along highways and through crowded streets recklessly, the killing of human beings is a natural and probable result to be anticipated. When a homicide follows as a consequence of such conduct, a criminal intent is imputed to the offender, and he may be punished for his crime. The precise grade of such a homicide, whether murder or manslaughter, depends upon the facts of the particular case.''

There are many cases to like effect. One of the leading cases is *Cockrell* v. *State,* decided by the Court of Criminal Appeals of Texas and reported in 135 Tex. Cr. Rep. 218, 117 S. W. 2d 1105. The reports of adjudicated cases indicate a marked tendency to hold defendants for murder in the second degree in facts like the case at bar rather than for a lower degree of homicide; and there was no error in refusing to instruct a verdict for the defendant on second degree murder.

II.  Effect of Defendant Testifying.  Over the defendant's objection, the trial court instructed the jury that since the defendant had become a witness in this case, his testimony was to be considered the same as the testimony of any other witness. This instruction should not have been given over the protest of the defendant. The better practice is for the court to give such an in-

struction if the defendant requests it, but not to give it over the protest of the defendant.

In *Smith* v. *State,* 172 Ark. 156, 287 S. W. 1026, we said of such an instruction: "It is within the discretion of the trial court to give an instruction relative to the right of the defendant to testify in his own behalf, but it is the better practice not to refer to this right or rules governing his credibility and the weight to be attached to his evidence, but to allow him to take his place along with all other witnesses under the general charge relative to the credibility and weight to be attached to their testimony."

In *Carroll* v. *State,* 181 Ark. 1145, 29 S. W. 2d 670, we again reiterated what we had said in the Smith case. To like effect see *Nicholas* v. *State,* 182 Ark. 309, 31 S. W. 2d 527; *Gentry* v. *State,* 201 Ark. 729, 147 S. W. 2d 1, and annotation in 85 A. L. R. 533. We have never reversed a case for the giving of such an instruction, although we have many times condemned the practice of the trial court giving such an instruction over the objections of the defendant. We do not reverse the case at bar because of this instruction.

III. Refusal to Charge on Voluntary Manslaughter. The appellant, in his requested instruction No. 2, sought to have the court submit to the jury the question of whether the defendant was guilty of voluntary manslaughter; but the trial court refused this instruction, telling the jury: "The court charges you that this is a case of murder in the second degree or nothing. There is no manslaughter in it. It is either second degree murder or nothing." And again: "The charge, I said, is murder in the second degree." We hold that the trial court committed reversible error in failing to charge the jury on voluntary manslaughter in this case. It must be remembered that the defendant testified that the deceased was fighting him and grabbing the steering wheel. The defendant testified: "The fellow next to me was fighting at me and grabbed the steering wheel. The other fellow jumped off. . . . This fellow grabbed at me and when he did, he missed the steering wheel and I throwed up my hands and he went off. . . ."

In the voluntary confession to the officers, as previously set out herein, the defendant said that when the deceased threatened to turn him over to the officers, the defendant "lost his head." There was thus made a question of fact for the jury whether the defendant committed the homicide under a sudden heat of passion which could have been caused by either anger, surprise, fear or terror. It is a question of what was the defendant's frame of mind that caused him to do the act. If it was from a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, then it was voluntary manslaughter, and the defendant had a right to have the jury pass on that question.

In the case of *Collins* v. *State,* 102 Ark. 180, 143 S. W. 1075, Collins and Jones were riding in a buggy in the night time, and they fired a pistol. The deceased (Yarborough) came from his house towards the buggy with a gun in his hand and ordered the defendant and his companion, Jones, to halt; and both sides started shooting. Collins was indicted for the killing of the deceased and convicted of murder. The trial court refused to submit the question of manslaughter. Mr. Justice FRAUENTHAL, speaking for the court, said: "Both Jones and the defendant were surprised by the appearance of the deceased near the buggy and by his attack made with gun in hand, and, not knowing who he was, they feared either that they would be robbed by him or receive injury to their persons from him; and that by reason of this fear and surprise Jones fired at the deceased. This, in short, is the testimony of the defendant himself, which though contradicted in many material points by other evidence in the case, nevertheless presented an issue which, under the law, he had a right to have submitted to and be determined by the jury upon proper instructions. It appears that the court instructed the jury relative to murder in the first and second degrees, but did not instruct them at all in reference to the crime of manslaughter or the punishment for that degree of homicide, although requested to do so by the defendant. The grade of a homicide may be reduced from murder to manslaughter by reason of a passion caused by a

provocation apparently sufficient to make the passion irresistible. The passion may consist of anger or fear or terror. These are the causes from which the passion springs; and, whether induced by the one or other of these causes, it will reduce the grade of the homicide from murder to manslaughter. It is perfectly proper to show that in a given case the passion did exist for the reason that it was induced by anger suddenly aroused, or by surprise, or by fear, or by terror; and where there is any evidence tending to show that the defendant was guilty of a lower grade of homicide than murder, the trial judge should instruct the jury in reference thereto when requested by the defendant. *Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; *Allison* v. *State,* 74 Ark. 453, 86 S. W. 409; *Williams* v. *State,* 100 Ark. 218, 139 S. W. 1119; *Stevenson* v. *United States,* 162 U. S. 313, 16 S. Ct. 839, 40 L. Ed. 980; *Wallace* v. *United States,* 162 U. S. 466, 16 S. Ct. 859, 40 L. Ed. 1039.

This case of *Collins* v. *State, supra,* is a leading authority on this question, and is directly in point and ruling here. The language of Mr. Justice FRAUENTHAL is so clear that further comment is unnecessary. It is not a question of whether we believe the defendant; the point is that he had a right to have his story submitted to the jury. That is the purpose of our jury system; and the court erred in denying him this right; and for the failure to submit the issue of voluntary manslaughter to the jury this cause must be reversed.

IV. Refusal to Charge on Involuntary Manslaughter. The defendant, in his requested instruction No. 3, asked the court to instruct the jury on involuntary manslaughter, and this requested instruction was refused. We hold that the trial court was correct in refusing to charge on involuntary manslaughter. The defendant intended to shake the deceased off of the car, and he committed the homicide. Involuntary manslaughter applies where the homicide is unintentional. That cannot apply here. In *McGough* v. *State,* 119 Ark. 57, 177 S. W. 398, the appellant had committed a homicide and claimed that the jury should have been instructed on involuntary manslaughter. This court, speak-

ing through Chief Justice McCulloch, said: "According to the undisputed testimony, the death of Ferguson resulted from the voluntary act of appellant in firing the gun at him. That being true, the question of involuntary manslaughter is not involved. Where death results from a voluntary act, and the killing was intentional and resulted from means calculated to produce death, the crime is voluntary manslaughter or some higher degree of criminal homicide. It is not involuntary manslaughter. Wharton on Homicide (3 ed.), § 6."

That quotation finds full application here. The defendant, by his own voluntary act, committed the homicide, and, therefore, it could not be involuntary manslaughter. In Warren on Homicide (Permanent Edition), § 86, it is stated: "The killing is not unintentional where the defendant intentionally did an act, the natural consequence of which would endanger life, on the principle that one is presumed to intend the natural consequences of his act, although he intended only to disable the deceased."

The case at bar is like the McGough case, *supra,* and is not like *Madding* v. *State,* 118 Ark. 506, 177 S. W. 410, or *Bowen* v. *State,* 100 Ark. 232, 140 S. W. 28. In those cases the accused did not intend to strike or injure anyone, and so the offense was involuntary manslaughter. But in the case at bar, the defendant, by his own statement, intended to throw the deceased off of the car. Tested by his own evidence, this was not a case of involuntary manslaughter. See *Tharp* v. *State,* 99 Ark. 188, 137 S. W. 1097; *Crafford* v. *State,* 169 Ark. 225, 273 S. W. 13, and *Wood* v. *Commonwealth,* 7 S. W. 391, 9 Ky. L. Rep. 872, We hold that the court correctly refused to instruct on involuntary manslaughter.

V. Curing the Error. We therefore reach the conclusion that the only reversible error committed in this case was the refusal of the trial court to instruct the jury on voluntary manslaughter; and we have a line of authorities in this state that holds that such an error can be cured without the necessity of a new trial if the Attorney General so elects. Some of the cases so holding are: *Brown* v. *State,* 34 Ark. 232, (where the crime

was reduced from voluntary to involuntary manslaughter); *Noble* v. *State*, 75 Ark. 246, 87 S. W. 2d 120, (where the crime of murder in the second degree was reduced to voluntary manslaughter); *Roberson* v. *State*, 109 Ark. 420, 160 S. W. 214, (where the crime was reduced from assault with intent to kill to assault and battery); *King* v. *State*, 117 Ark. 82, 173 S. W. 852, (where the crime was reduced from murder in the first degree to murder in the second degree); *Brooks* v. *State*, 141 Ark. 57, 216 S. W. 705, (where the crime was reduced from murder in the second degree to voluntary manslaughter); *Reynolds* v. *State*, 186 Ark. 223, 53 S. W. 2d 224, (where the crime was reduced from murder in the second degree to voluntary manslaughter). There are other cases to the same effect. See West's Arkansas Digest, "Homicide," § 347. In some of the cases when the grade of the offense was reduced, the punishment was fixed at the maximum for the lower grade; but in none of these cases do we find that the defendant was originally sentenced to the minimum punishment of the higher grade, as is the situation in the case at bar. Where the defendant is sentenced to the minimum punishment of the grade for which he is convicted, and there is an error, as here, in failing to instruct on the lower degree of homicide, then, when we cure the error by reducing the grade of the crime, we should necessarily give the defendant the minimum punishment for the lower grade. There is no necessity of reviewing these cases. They afford ample authority for the order herein.

For the error in failing to instruct on voluntary manslaughter, the judgment will be reversed, and the cause remanded for a new trial, unless the Attorney General, within fifteen juridical days, elects that the punishment be modified so as to sentence the defendant for voluntary manslaughter and fix his punishment at two years in the state penitentiary.

The Chief Justice, and Mr. Justice McHANEY and Mr. Justice HOLT believe the case should be affirmed; but a majority not so agreeing, then the Chief Justice, and Mr. Justice McHANEY and Mr. Justice HOLT concur in the final result reached.

Mr. Justice SMITH and Mr. Justice KNOX believe that the cause should be reversed and remanded because of failure to instruct on involuntary manslaughter. They, therefore, dissent from the final result reached.

The Chief Justice, and Mr. Justice McHANEY and Mr. Justice HOLT concur in part. Mr. Justice SMITH and Mr. Justice KNOX dissent in part.

McHANEY, J., (dissenting). The majority have reversed and remanded this case unless the Attorney General elects to have it affirmed for voluntary manslaughter with the minimum punishment of two years in the peintentiary. This because, say the majority, the court erred in instructing the jury that appellant was guilty of murder in the second degree or nothing, and refused to instruct on manslaughter either voluntary or involuntary. In so holding I think the trial court was absolutely correct and that the facts recited in the majority opinion show that he was correct. I think the facts justified a charge against appellant of murder in the first degree, and that, if he had been so charged and convicted the judgment should be affirmed. However, he was only charged with murder in the second degree, was convicted and the judgment should be affirmed.

Our statute, § 2964 of Pope's Digest, defines murder as "the unlawful killing of a human being in the peace of the state with malice aforethought, either express or implied." Murder is of two kinds, first and second degrees. "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing —shall be deemed murder in the first degree." Section 2969. "All other murder shall be deemed murder in the second degree." Section 2970.

A specific intent to take life is not a necessary element of murder in the second degree. *Petty* v. *State*, 76 Ark. 515, 89 S. W. 465; *Byrd* v. *State*, 76 Ark. 286, 88 S. W. 974; *Price* v. *State*, 114 Ark. 398, 170 S. W. 235. Yet the majority opinion shows by appellant's own testimony and confession that he had the intent to kill Dr. Ritchie. Appellant was drunk, but not too drunk to know

what he was doing. We have held that if one who is too drunk to know what he is about assaults another without provocation and beats him to death, he is guilty of murder in the second degree, *Byrd* v. *State, supra.*

"Manslaughter," says our statute, § 2980, "is the unlawful killing of a human being, without malice, express or implied, and without deliberation." Two kinds of manslaughter are defined in the next two sections, voluntary and involuntary. It is voluntary "upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible." It is entirely beyond my ability to read the evidence as given by appellant and set out by the majority opinion and reach the conclusion that appellant might have been guilty of involuntary manslaughter. In the first place, to be either kind of manslaughter, there must be a complete absence of malice, "without malice, express or implied," the presence of which makes the offense murder, —murder in the second degree, if there is lacking the specific intent to kill, but with it, murder in the first degree; but assuming the want of malice, where is the evidence that he threw Dr. Ritchie off his car "upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible?" To me there is no such evidence, and it is not error to refuse an instruction for a lower degree of the crime when there is no evidence to support such lower degree. *Washington* v. *State,* 181 Ark. 1011, 28 S. W. 2d 1055. His own statement fails to reveal any sudden heat of passion. His only fear was that Ritchie would turn him over to the cops, and, because he was drunk, it would go hard with him. He told them they were not man enough to take him to the cops, and that it was just suicide to him, thereby revealing his malice and intent to kill if necessary to throw him off the car. The fact that Dr. Ritchie struck at him, if it be a fact, and attempted to take hold of the steering wheel did not cause a sudden heat of passion on his part, nor was that act apparently or otherwise sufficient to make the passion irresistible. I think the cases cited in the majority opinion are not in point, because the undisputed facts here make them inapplicable.

I, therefore, respectfully dissent from the holding that the court erred in instructing the jury that appellant was guilty of murder in the second degree or nothing, and refusing to instruct on manslaughter, either voluntary or involuntary. I concur in the affirmance of guilt for voluntary manslaughter, as it is embraced in the charge of second degree murder, if the Attorney General so elects.

Mr. Justice HOLT concurs in the views here expressed. The Chief Justice concurs except as to the expression that the facts would justify a charge of murder in the first degree.