McGARRAH *v.* STATE.

4605                                                 229 S. W. 2d 665

Opinion delivered April 24, 1950.
Rehearing denied June 5, 1950.

*Rex W. Perkins* and *G. T. Sullins,* for appellant.

*Ike Murry,* Attorney General, and *Jeff Duty,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Appellant, Edgar McGarrah, was tried on an information charging him with the murder of Franklin Holloway. The uncontradicted facts established that appellant was playing a game of pool with Billy Bridges; that Holloway, Lem McGarrah (appellant's brother) and others were seated nearby and watching the game; that conversation was passing between the participants and the onlookers; that just after appellant had made a good shot and won the game, Hol-

loway arose and took a step; and that appellant struck Holloway on the head with the pool cue, inflicting a skull fracture from which death ensued a few hours later.

It was the State's theory that appellant inflicted the blow because of previous animosity and a declared intention to "get even." It was the appellant's theory that Holloway had a knife, or some weapon, in his pocket and was being aided by Lem McGarrah; that the two were advancing on Edgar McGarrah to inflict injuries, and that appellant struck the blow in necessary self-defense. The jury's verdict evidently adopted a middle ground theory, supported by the evidence, to the effect that Holloway arose to leave the pool hall and that Edgar McGarrah, in a sudden heat of passion, struck Holloway without provocation. From a conviction of voluntary manslaughter there is this appeal.

I. *Continuance for Absent Witness.* The information was filed on May 17, 1949. On October 10th the Court set the case to be tried on October 27th. Appellant had a subpoena issued for the witness Davis, and learned that he was in California. On October 12th appellant's counsel at Fayetteville *wrote* the Prosecuting Attorney at Berryville, suggesting the taking of the deposition of Davis in California; but no interrogatories were enclosed in the letter. On October 20th the Prosecuting Attorney went to Fayetteville and, with appellant's attorney, prepared the interrogatories which were forwarded to California. When the deposition had not been returned on October 27th, appellant moved for a continuance.

The motion was overruled; and we see no abuse of discretion committed by the Trial Court. The burden was on the appellant to exercise due diligence to obtain the testimony of the absent witness. Appellant had from May until October to get the deposition. Instead of writing a letter on October 12th (15 days before the trial), appellant could have had the interrogatories prepared and personally delivered to the Prosecuting Attorney. In short, we fail to find the exercise of due diligence by appellant, and so we refuse to say that the Trial Court

abused its discretion in overruling the motion. See *Jackson* v. *State,* 94 Ark. 169, 126 S. W. 843; *Miller* v. *State,* 94 Ark. 538, 128 S. W. 353; *Joiner* v. *State,* 113 Ark. 112, 167 S. W. 492; and *French* v. *State,* 205 Ark. 386, 168 S. W. 2d 829.

II. *Continuance on Account of Illness of Counsel.* Appellant had retained the law firm of Sullins & Perkins to represent him. Mr. Sullins was ill at the time of the trial and continuance was sought for that reason. But Mr. Perkins ably represented the defendant; and such representation made continuance unnecessary. See *Maloney* v. *State,* 181 Ark. 1035, 27 S. W. 2d 94; *Curtis* v. *State,* 89 Ark. 394, 117 S. W. 521; and *Holmes* v. *State,* 144 Ark. 617, 224 S. W. 394.

III. *Exclusion of Testimony.* The defense offered to prove by Dr. Harrison that on one or two occasions the deceased, Franklin Holloway, had been brought to the Doctor in a delirious condition which the Doctor thought had been occasioned by acute alcoholism; and that at such times the deceased was violent and had to be restrained. The Trial Court excluded the proffered testimony on the theory that the witness had acquired his information as a result of the confidential relationship of physician and patient. See *James* v. *State,* 161 Ark. 389, 256 S. W. 372. We prefer to sustain the exclusion of the proffered evidence, because it was irrelevant. The defendant testified:

"Q. Let me ask you this: did you think he was having a 'spell' that night?

"A. No, I didn't have time to think anything."

Since apprehension of Holloway having a "spell" was not the cause of the defendant striking the deceased, the evidence of "spells" was entirely irrelevant. We need not consider whether the evidence was competent against the objection that it was an effort to show general reputation by specific incidents.

Furthermore, the Court allowed other witnesses to testify as to the "spells" the deceased suffered, so the testimony of Dr. Harrison could only have been cumula-

tive; and the Trial Court has discretion to limit the number of witnesses whose evidence is cumulative. See *Sheppard* v. *State,* 120 Ark. 160, 179 S. W. 168, and *Cole* v. *State,* 156 Ark. 9, 245 S. W. 303.

IV. *State's Instruction No. 11.* The Court gave this instruction:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

The appellant objected to this instruction, claiming that it shifted the burden of proof to the defense; and the appellant asked that these words be added at the end of the instruction:

"But the burden of proof is on the State in the whole case to convince you beyond a reasonable doubt of the guilt of the defendant."

The instruction, as given, is in the exact language of the Statute (§ 41-2246, Ark. Stats. 1947); and such an instruction has been discussed by this Court in numerous cases, some of which are listed in the Annotation immediately following the Statute, and other cases are cited in *Gaines* v. *State,* 208 Ark. 293, 186 S. W. 2d 154. The refusal of the Trial Court to add the additional words requested is justified, because the Court, in other instructions, stated that the burden of proof was on the State. Instruction No. 4 advised the jury as to the presumption of innocence; Instruction No. 5 was on reasonable doubt; and Instruction No. 21 told the jury that the burden was on the State to convince the jury beyond a reasonable doubt that the defendant was guilty. In *Thomas* v. *State,* 85 Ark. 357, 108 S. W. 224, the same contention was made as here; and the Court's opinion in that case, delivered by Mr. Justice Battle, is ruling in the case at bar.

*V. Refusal to Instruct on Involuntary Manslaughter.*
The Court ruled that the evidence was insufficient to
sustain a charge of first degree murder, and instructed
the jury on second degree murder and voluntary man-
slaughter. The defendant requested an instruction on
involuntary manslaughter and claims error because it
was refused. Assuming, but not deciding, that the re-
quested instruction was correctly and fully worded, and
also conceding that an instruction on involuntary man-
slaughter should generally be given in a homicide case
like the one at bar, nevertheless we hold that there was
no error in refusing to give the instruction in this case.
When an instruction on involuntary manslaughter should
be given in a homicide case, is a question that has been
considered in many of our cases, a few of which are:

*Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; *Scott* v.
*State,* 75 Ark. 142, 86 S. W. 1004; *Edwards* v. *State,* 110
Ark. 590, 163 S. W. 155; *McGough* v. *State,* 119 Ark. 57,
177 S. W. 398; *Black* v. *State,* 171 Ark. 307, 284 S. W. 751;
*Deatherage* v. *State,* 194 Ark. 513, 108 S. W. 2d 904; *Cook*
v. *State,* 196 Ark. 1133, 121 S. W. 2d 87; *Bailey* v. *State,*
206 Ark. 121, 173 S. W. 2d 1010; and *Hearn* v. *State,* 212
Ark. 360, 205 S. W. 2d 477.

In *Ringer* v. *State (supra),* as well as in *Scott* v.
*State (supra),* the accused killed a third party while at-
tempting to defend himself against an assailant, whereas
in the case at bar the accused killed the man whom he
claimed was his assailant, so there was no mistake as to
the victim. In *Edwards* v. *State (supra)* the accused
threw at the deceased a small stick of wood (which the
Court said was not calculated to produce death), whereas
in the case at bar the accused struck the deceased on the
head with the heavy end of a pool cue and with such
force that the stick broke. In *Deatherage* v. *State (supra)*
an officer shot a prisoner, and the question was the limit
to which the officer could go in repelling an attack by a
prisoner, whereas in the case at bar neither of the parties
was an officer. The facts in the case at bar distinguish
it from these four cases (*i.e.* Ringer, Edwards, Scott and
Deatherage) and bring it within our holding in the Mc-
Gough, Black and Bailey cases, *supra.*

In *Bailey* v. *State,* 206 Ark. 121, 173 S. W. 2d 1010, we said:

". . . We hold that the trial court was correct in refusing to charge on involuntary manslaughter. The defendant intended to shake the deceased off of the car, and he committed the homicide. Involuntary manslaughter applies where the homicide is unintentional. That cannot apply here. In *McGough* v. *State,* 119 Ark. 57, 177 S. W. 398, the appellant had committed a homicide and claimed that the jury should have been instructed on involuntary manslaughter. This court, speaking through Chief Justice McCulloch, said: 'According to the undisputed testimony, the death of Ferguson resulted from the voluntary act of appellant in firing the gun at him. That being true, the question of involuntary manslaughter is not involved. Where death results from a voluntary act, and the killing was intentional and resulted from means calculated to produce death, the crime is voluntary manslaughter or some higher degree of criminal homicide. It is not involuntary manslaughter. Wharton on Homicide (3 Ed.), § 6.'

"That quotation finds full application here. The defendant, by his own voluntary act, committed the homicide, and, therefore, it could not be involuntary manslaughter. In Warren on Homicide (Permanent Edition), § 86, it is stated: 'The killing is not unintentional where the defendant intentionally did an act, the natural consequence of which would endanger life, on the principle that one is presumed to intend the natural consequences of his act, although he intended only to disable the deceased.' "

In the case at bar the jury was told that if it believed the appellant acted in necessary self-defense, it would acquit him. The fact that the punishment assessed was five years—rather than the minimum of two years for voluntary manslaughter [1]—shows the jury did not believe the theory of self-defense. If appellant did not act in self-defense, then he was guilty of voluntary manslaughter.

---

[1] See § 41-2299, Ark. Stat. (1947).

## CONCLUSION

In addition to those assignments discussed, we have also examined all the other assignments in the motion for new trial, and find none justifying a reversal.

Affirmed.

