## CRAFFORD v. STATE.

### Opinion delivered June 22, 1925.

1. CRIMINAL LAW—PROOF OF FORMER TESTIMONY.—The court permitted the prosecuting attorney to read to a witness extracts from his testimony before the grand jury and to ask him whether he had made such statements, to which he replied that he had given such testimony, and that it was true. *Held* that such testimony was admissible either to refresh the memory of the witness or to impeach him if he had testified to the contrary at the trial.

2. CRIMINAL LAW—MULTIPLICATION OF INSTRUCTIONS.—It was not prejudicial error to refuse an instruction covered by one already given.

3. HOMICIDE—INSTRUCTION AS TO THREATS—PREJUDICE.—It was not prejudicial error in a murder case to refuse an instruction that threats made by deceased and communicated to defendant might be considered in determining defendant's motive at the time of the killing, where a verdict of voluntary manslaughter absolved defendant of malice.

4. HOMICIDE—VOLUNTARY KILLING—INSTRUCTION.—Where, in a murder case, the undisputed evidence was that the killing was intentional, the defense being that it was done in self-defense, it was not error to refuse to instruct as to involuntary manslaughter.

5. HOMICIDE—EVIDENCE OF FORMER QUARREL.—In a prosecution for murder, it was not error to refuse to permit defendant to testify about a difficulty which had occurred between himself and deceased seven years prior to the killing, where there was no proof that a hostile feeling had existed between the parties since that occurrence down to the date of the killing.

Appeal from Woodruff Circuit Court, Southern District; *G. Otis Bogle*, Special Judge; affirmed.

*Roy D. Campbell,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HART, J. John H. Crafford was indicted for murder in the first degree charged to have been committed by killing Alvin Hutchins on the 4th day of July, 1921, in Woodruff County, Arkansas.

In March, 1925, he was convicted of voluntary manslaughter, and his punishment fixed by the jury trying him at three years in the State Penitentiary. The case is here on appeal.

According to the evidence for the State, John H. Crafford shot and killed Alvin Hutchins at the home of Mrs. Sarah Hopper in the Southern District of Woodruff County, Ark., on July 4, 1921. Crafford and Hutchins had both married daughters of Mrs. Hopper and had been associated in business for several years. Hutchins' wife was dead, and he was living with Mrs. Hopper when he was killed. Mrs. Hopper had all her children there at a family reunion, and they had a picnic dinner some distance from the house. The defendant and his family were there. The defendant drove away somewhere in his automobile and came back after the others had eaten dinner. He was drinking some and had a fuss with Mrs. Hopper about the key to his automobile. The defendant took a pistol out of his car and approached the house with it. Mrs. Hopper and her daughter and one son-in-law went in the house. Alvin Hutchins and another son-in-law were out back of the house beating up ice with an ax for the purpose of making ice cream. Crafford went back of the house where Hutchins was, and the persons in the house heard four pistol shots fired right close together. Some one hollered 'Oh', two or three times. After the shooting, Crafford left with the pistol in his hand. There were four pistol wounds in the body of Hutchins. One went in the collar bone, two went in his back above the waist line, and one of these came out just above the navel. One of the shots went in his elbow. No ax or weapon of any kind was found near the body of

Hutchins. His body was found six or eight feet from the back steps of the house. Every one in the crowd was sober except the defendant.

According to the testimony of the defendant and of his son, who was with him, Hutchins was advancing upon the defendant with an ax and endeavoring to strike him with it at the time he was shot and killed.

It was also shown by other witnesses that the deceased had made threats against the defendant which had been communicated to him. This brief summary of the evidence shows that the verdict of the jury is supported by the evidence, and no reversal of the judgment is asked on this ground.

The first assignment of error upon which the defendant relies for a reversal of the judgment is that the court erred in allowing the prosecuting attorney to read to Elton Holwell and Mrs. Sarah Hopper extracts from their testimony before the grand jury and ask each of them if he had not made such statements. The extracts from the testimony before the grand jury were read to the witnesses for the purpose of refreshing their memory, and each one stated that he had given the testimony before the grand jury as read to him. In making this contention counsel for the defendant relies upon the case of *Brown* v. *State,* 168 Ark. 433. We do not think that case has any application. There the witness denied that he had testified differently before the grand jury from the testimony being given by him at the trial. Therefore, the court held that it was improper to admit the purported evidence of the witness before the grand jury for the purpose of impeaching him, without first proof that the testimony offered was the correct testimony of the witness before the grand jury. In the case before us each witness admitted that the extract of the testimony before the grand jury had been given by him before that body and stated further that such testimony was true. Thus it will be seen that the testimony was admissible, either for the purpose of contradicting the testimony given by the witnesses at the trial, or as substantive testimony given by

them at the trial, after refreshing their memory from the testimony given by them before the grand jury. *Minor v. State,* 162 Ark. 136.

The next assignment of error is that the court erred in refusing to give instruction No. 2 asked by the defendant, which reads as follows: "You have a right, in arriving at a verdict in this case, to consider any threats made by the deceased against the defendant, which threats were communicated to the defendant, not only because such threats may show who was the aggressor at the time the killing occurred, but because such communicated threats may show defendant's motive at the time of the killing."

That part of the instruction which told the jury it might consider threats communicated to the defendant in determining who was the aggressor, was covered by an instruction given by the court. The court had already told the jury that it might consider previous threats made by the deceased against the defendant, whether communicated to the defendant or not, for the purpose of determining who was the aggressor in the difficulty, and the court is not required to multiply instructions on the same point. But it is insisted that the court erred in not telling the jury that communicated threats might be considered for the purpose of showing the defendant's motive at the time of the killing. Counsel for the defendant relies upon the case of *Lee* v. *State,* 72 Ark. 436, where it was held that in a prosecution for murder antecedent threats by deceased against the defendant which had been communicated were admissible, not only upon the question as to who was the aggressor, but as tending to show motive.

In the case at bar, the defendant was indicted for murder, but was only convicted of voluntary manslaughter. Voluntary manslaughter consists in the unlawful killing of another without malice, express or implied, and it is distinguished from murder by the absence of malice. *Bivens* v. *State,* 11 Ark. 455, and *Brooks* v. *State,* 141 Ark. 57. Inasmuch as the jury only convicted the defendant of voluntary manslaughter, the

question of motive passed out of the case, and the defendant was not prejudiced by the refusal of the court to give the instruction.

It is well settled in this State that a judgment of conviction will not be reversed unless prejudicial error was committed. *Middleton* v. *State,* 162 Ark. 530. In this connection it may be stated that the court fully submitted to the jury the question of excusable or justifiable homicide.

The next assignment of error is that the court erred in refusing to instruct the jury on involuntary manslaughter. There is no element of involuntary manslaughter in this case. As defined at common law and under our statute, substantially declaratory thereof, involuntary manslaughter consists in the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty. The unlawfulness of the act in connection with which the killing occurs is the element which distinguishes involuntary manslaughter from a killing excusable as by accident or misfortune. 29 C. J. § 134, p. 1148; *State* v. *Hardister,* 38 Ark. 605; *McGough* v. *State,* 119 Ark. 57; *White* v. *State,* 164 Ark. 517.

According to the undisputed testimony, the death of Hutchins resulted from the voluntary act of Crafford in shooting him four times with a pistol. Thus it will be seen that the killing was intentional and resulted from the use of a deadly weapon. The killing was not the result of an accident at all, but it was intentional on the part of the defendant. His defense was that it was necessary to shoot and kill the deceased in order to save his own life or save himself from great bodily harm. Therefore, under the authorities just cited, the court did not err in refusing to instruct the jury on involuntary manslaughter.

Error is also assigned in the refusal of the court to give other instructions asked by the defendant. We do not think that this assignment of error is well taken. A comparison of the refused instructions with the instructions given by the court shows that the matters embraced in the refused instructions were fully covered by those given by the court.

Finally, it is insisted that the court erred in refusing to allow the defendant to testify about a difficulty which occurred between the defendant and the deceased in 1914. The killing occurred on the 4th day of July, 1921, and the undisputed testimony showed that they had been friendly during that spring. We think, however, that proof of the difficulty which occurred in 1914 is too remote unless a hostile feeling had existed between the parties since that occurrence down to the date of the killing. Therefore, there was no error in refusing this testimony. *Cochrell* v. *State,* 148 Ark. 256.

We find no prejudicial error in the record, and the judgment will be affirmed.